**Joan LEHMAN, Plaintiff-Appellant,**

v.

**Robert MORRISSEY, Michael Ramos, Donald Wiser, Merl Frigon, James Mann, David Filius, Charles E. McGlothlin, and the United States of America, Defendants-Appellees.**

**No. 85-3680.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 6, 1985.[*]

Decided Dec. 26, 1985.

<hr />

[*] This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 3(f).

<hr />

George T. Radovich, Billings, Mont., for plaintiff-appellant.

Lorraine D. Gallinger, Billings, Mont., for defendants-appellees.

Before GOODWIN and FARRIS, Circuit Judges, and STEPHENS,[**] District Judge.

**PER CURIAM.**

Joan Lehman brought this action against her former supervisors in the United States Forest Service and against the United States for damages for several employment-related claims. All of her claims were dismissed, but she appeals only the dismissal of her claim for intentional infliction of emotional distress. Because the Civil Service Reform Act of 1978 ("C.S.R. A."), Pub.L. No. 95-454, 92 Stat. 1111, (codified as amended in scattered sections of 5 U.S.C. (1982)) covers claims like Lehman's, her common law claims are preempted and so provide her no alternative remedy.[1]

[**] The Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

**1.** Preemption analysis under § 301 of the Labor Management Relations Act ("L.M.R.A."), 29

Further, the C.S.R.A.'s remedies preclude her right to direct review in federal court in this case. We affirm the judgment of dismissal.

Lehman was hired as an accountant-trainee in a two-year training program in November 1980. Problems with her immediate supervisor, Robert Morrissey, developed within weeks. According to Lehman, he made it impossible for her to complete her job by "failing to provide her with adequate information with which to perform specific tasks," "refusing to give her exposure to certain key areas," making himself "unavailable for the plaintiff's questions," and not including her on trips to special training sessions.

Lehman wrote a formal grievance letter to Tom Coston, the Regional Forester. The Regional Director of Personnel Management for the Forest Service responded in due course that he found "no evidence to support your allegation of unfair treatment and reprisal...." The letter outlined the steps Lehman should take if she wanted to pursue her grievance further. She made no additional efforts to seek redress through those administrative channels.

Lehman returned to work in May 1982, but under doctor's orders not to work for Morrissey. The Custer National Forest could not find another position for her, but obtained a "directed reassignment" for her to the Beaverhead National Forest. Lehman resigned August 31, and in October 1982 she filed this action in federal district court. Her five-count complaint alleged sex discrimination, breach of contract, intentional infliction of emotional distress, interference with contract, and provision of false information.

In most cases where a federal employee has an employment-related grievance, he or she must pursue the remedies available under the C.S.R.A.. The C.S.R.A. provides

a comprehensive scheme intended to balance the right of federal employees to obtain redress for employment-related grievances against the interest in promoting an efficiently run civil service.

Lehman's case is covered by the statute. The kinds of activities about which she complains are specifically prohibited by the C.S.R.A.. *See* 5 U.S.C. §§ 2301(b)(7) (1982) (employees should receive effective training), 2302(b)(4) (1982) (supervisor may not willfully obstruct employee's right to compete for employment), 2302(b)(11) (1982) (supervisor may not take any action violating any of the merit systems principles of § 2301), and 7513 (1982) (dismissals only for cause).

If Lehman was unsatisfied with the Forest Service's handling of her grievance, she was entitled to take her complaint to the Office of Special Counsel of the Merit Systems Protection Board, which would investigate her claims. *See* C.S.R.A., ch. 395, 5 U.S.C. §§ 1201 *et seq.* (1982). If the Special Counsel found merit in her claims, that officer could file a complaint before the Merit Systems Protection Board. 5 U.S.C. § 1206(g)(1)(A) (1982). In the case of § 2302 violations, review in federal appeals court would be available if the Merit Systems Protection Board imposed disciplinary action upon an employee. 5 U.S.C. § 1207(c) (1982). If Lehman had a claim under § 7513 for wrongful discharge or demotion (which is not clear from the record), she could obtain review before the Merit Systems Protection Board, 5 U.S.C. §§ 7513(d), 7701 (1982), and could appeal an adverse ruling in federal court, 5 U.S.C. § 7703 (1982).

A number of federal courts, including this one, have held that in enacting the C.S.R.A. Congress meant to limit the remedies of federal employees bringing claims closely intertwined with their conditions of employment to those remedies provided in

U.S.C. § 185 (1982) provides a helpful analogy to the C.S.R.A. preemption here. *See* e.g., *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468, 1473–76 (9th Cir.1984) (although plaintiff's claims were framed in state common law terms, they are grievances covered by L.M. R.A. § 301; thus, under federal preemption doctrine, plaintiff's action is viable only as a federal suit).

the statute. *Veit v. Heckler,* 746 F.2d 508, 509 (9th Cir.1984) ("the comprehensive remedial nature of the [C.S.R.A.] indicates a congressional intent to preclude ... judicial review [of federal personnel decisions and procedures] except as provided for in the statute itself"); *Carducci v. Regan,* 714 F.2d 171, 172 (D.C.Cir.1983) (no direct review in federal district court of nonconstitutional claim of wrongful reassignment; court declines to rule on whether exclusivity of C.S.R.A. remedies extends to constitutional claims).

The First Circuit, in contrast to the cited decisions has treated the C.S.R.A. remedial scheme as imposing an exhaustion requirement in a case alleging a § 2302(b) violation. *See Dugan v. Ramsay,* 727 F.2d 192, 194 (1st Cir.1984).[2] The court acknowledged that failure to exhaust can preclude jurisdiction, *id.* at 193, but held that exhaustion requirements can be waived, and found that the government had expressly conceded that exhaustion was not necessary, *id.* at 194.

Without addressing whether or when the C.S.R.A. creates an exhaustion requirement—which presupposes ultimate federal court review—we note that the government in our case never expressly waived or otherwise lost the defense of failure to comply with the provisions of the C.S.R.A.. The government first raised that defense in its amended answer, and has reiterated the argument here. Nor can Lehman assert that she was unaware of her administrative remedies prior to filing her action. The April 1982 letter from the Director of Personnel Management detailed the steps she should take if she wanted to have her grievance investigated and heard.

Lehman failed to pursue her administrative remedies under the C.S.R.A.. That statute provides Lehman's sole recourse.

The judgment of dismissal is affirmed.

---

**2.** The court also ruled that the C.S.R.A. does not preclude judicial review when the claim is brought under the Administrative Procedure Act ("A.P.A."), 5 U.S.C. § 704 (1982). Since Lehman did not assert the A.P.A. as a basis for her suit, we express no opinion on the correctness of the First Circuit's holding.